## PETER MARCY et al. v. THE SUN MUTUAL INSURANCE COMPANY.

Plaintiff sued on a policy of insurance, upon a floating dock, containing the clause: "Insurance was against all risks." *Held:* That testimony, offered to prove that the terms "harbor risks" and "river risks," included the only risks covered by said policy of insurance, and that they have a definitive and settled meaning in the law of insurance, and comprehended only risks from fire, from collision, from extraordinary losses arising from extraordinary perils of the winds and waters, from external accidents only, and not from defects in the thing insured, is inadmissible. In the absence of a custom in regard to "floating docks," by which the terms used in the policy have acquired a particular signification, the construction is one of law, for the courts, upon the instrument itself. The opinion of witnesses upon the evidence, as it did not appear that they were shipwrights, or had any experience in building docks, was properly excluded.

That the terms "all risks" includes all river risks and harbor risks, so far as those risks were applicable to floating docks.

That there was a warranty on the part of the insured that the dock was seaworthy, well built, staunch, and capable of the business in which it was employed, and fitted with machinery and well protected against accidents arising from the ordinary effects of the elements in which it was employed.

That where a loss occurs without any known or apparent cause, the presumption is that such loss was occasioned by the unseaworthiness of the dock; yet this presumption may be rebutted by sufficient positive proof, by disinterested witnesses, of its seaworthiness.

A PPEAL from the Sixth District Court of New Orleans, *Cotton, J.*
*Gilmore, Bonford* and *Roselius*, for plaintiffs. *Maybin* and *R. Hunt*, for defendant and appellant.

MERRICK, C. J. The defendant, through its agent in this city, on the 23d day of August, 1854, renewed a policy of insurance upon a floating dock called the "Old Dry Dock."

The policy was for one year. The premium paid was 1⅛ per centum, and the amount of interest insured was $4500.

The policy was a printed marine policy, with such blanks filled as were proper to be filled, and with a clause in writing that "insurance was against all risks."

In March, 1855, the ship Boynton was received within the dock, when it was attempted to raise the ship by throwing off the water by the pump attached to the engine of the dock. Either from the defects in the dock itself, a sudden leak, the breaking of one of the pumps, or some obstruction to the valves from drift wood, the machinery became insufficient to raise the dock. The ship was removed; nevertheless, with all the exertions of those in charge of the dock, it gradually sunk, put out the fires in the furnace, and, going under, became a total loss.

The defendant resisted the payment of the sum insured, on the ground that the dock was not seaworthy, and had not a capacity sufficient for the Boynton, and that the loss was occasioned without any apparent external cause, and by a risk not insured against.

The case was tried by a jury, who found for the plaintiff, and the defendant appealed.

There are two bills of exception in the record which require our notice. The defendant offered to prove, by *Capt. Pollock* and other witnesses, that, according to the well established usage in New Orleans on the terms "harbor risks" and "river risks," the perils by which the plaintiffs allege they suffered the loss, and for which they seek to recover in this case, were not included in such risks, which were the only risks covered by the policy offered in evidence: that those are well known terms, and though ambiguous in themselves, have a definitive and settled meaning in the law of insurance, and comprehend only risks from fire, from collision, from extraordinary losses arising from extraordinary perils of the winds and waters; from external accidents only, and not from defects in the thing insured.

The court refused to admit the testimony, and the defendant excepted.

The court did not err. The covenant in the present policy is "against all risks." It is not pretended that any custom has been established in New Orleans in regard to insurances upon floating docks, by which the terms used have acquired a particular signification. In the absence of such custom, the construction is one of law for the courts upon the instrument itself.

On the second branch of the bill of exception, we observe that it does not appear that *Captain Swain* and *Robertson* were shipwrights, or had any experience in building docks. Their opinion upon the evidence was properly excluded. Indeed, in the conflict of testimony in this case, a decision of the question by the experts, whether or not the loss was occasioned by the defects in the dock insured would have been, if credited by the jury, a decision of the case itself.

The court was also requested to instruct the jury that the written words, "all risks," in the policy, must, on account of the nature and employment of the dry dock, be considered by the jury as meaning all river risks and harbor risks. This instruction the court refused, on the ground that it was in the province of the jury to say what was the intention of the parties, and what effect was to be given to the terms of the policy.

We think the court ought to have instructed the jury that the insurance did include the risks named, viz: so far as applicable to the object insured; that the dock was not intended to run from one point on the river to another, or to carry freight, but to be moored to the wharf; that the manner of its use required it to be partially submerged to raise the vessel entering the dock; that as the sinking and raising the dock occasioned its greatest risk, the policy covered all risks from external injuries while in action or use, as well as when entirely afloat.

That the jury ought to have been informed that, although the policy protected the insured against losses from such risks; nevertheless there was a warranty on the part of the insured that the dock was seaworthy or well built, staunch and capable of the business in which it was employed, and fitted with efficient machinery and well protected against accidents arising from the ordinary effects of the element in which it was employed; that if the jury believed

MARCY
v.
SUN INS. Co.

that the accident was occasioned by the inherent defects in the dock, such as weakness or rottenness of the timbers and works, or the insufficiency of the machinery, or the defective construction of the valves, &c., the insured are not liable; that if, on the contrary, the jury should be of the opinion that the dock and its machinery were in all respects staunch and well fitted for the business in which it was employed, and not used in this instance beyond its capacity, and that the accident was occasioned by the unusual and extraordinary effect of the drift wood forced by the current into the valves, by which their action was prevented, they having been properly made and secured, or if the loss was occasioned by any other unusual action of the winds, waves or currents of the river, that the plaintiffs would be entitled to recover under the policy, and not otherwise.

The defendant further requested the court to charge the jury that the plaintiffs were not entitled to recover unless they showed the cause of the sinking of the dock, and if no cause be shown to the satisfaction of the jury, they are bound to presume the dry dock unseaworthy; the court charged that, although the principle is true, it is not altogether applicable to this case.

We think the charge should have been given with the qualification that, although where a loss is occasioned without any known or apparent cause, the presumption is that such loss was occasioned by the unseaworthiness of the dock, yet that this presumption may be rebutted by sufficient positive proof, by disinterested witnesses, of the seaworthiness of the dock. *Snether* v. *Memphis Insurance Company*, 3 An. 474; 7 An. 279.

In the conflict of testimony in this case it is impossible to ascertain what principles of law governed the jury in their conclusions. We think it, therefore, our duty to remand the case for a new trial.

Judgment reversed, and a new trial ordered, with instructions to the lower court to be governed by the views herein expressed, and otherwise to proceed according to law; appellees to pay costs of appeal.